### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| LUIS MARIAN DURAN-COLON,<br>*Plaintiff*, | |
| v. | No. 3:21-cv-1489 (JAM) |
| JENNIFER LINDELOF *et al.*,<br>*Defendants*. | |

## ORDER OF DISMISSAL PURSUANT TO 28 U.S.C. § 1915A

Plaintiff Luis Marian Duran-Colon is a sentenced prisoner in the custody of the Connecticut Department of Correction ("DOC"). He has filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 against several prison and state officials. Duran-Colon primarily alleges claims of deliberate indifference to serious medical needs. Because he has failed to state a plausible claim for relief, I will dismiss the action without prejudice to the filing of an amended complaint on or before **July 13, 2022**.

### BACKGROUND

Duran-Colon names thirteen defendants: Dr. Jennifer Lindelof, Dr. James P. Nolan, Dr. Kathryn E. Wagner, Dr. Peter C. Albertsen, RN Jane M. Ventrella, Nurse Sandra, Dr. Ruiz, Dr. Maurice Lee, Lieutenant Owens, RCOO Furey,[1] RCOO Nicole Ayala, Commissioner Angel Quiros, and Governor Ned Lamont.[2]

On December 8, 2020, Duran-Colon traveled from Cheshire Correctional Institution ("Cheshire") to UConn Medical Center, where Dr. Lindelof performed a circumcision on Duran-

---

[1] Although the complaint does not define the acronym, I understand an "RCOO" to be a Regional Chief Operating Officer within the DOC.

[2] Doc. #1 at 1, 3.

Colon.[3] Drs. Nolan, Wagner, and Albertsen were also involved in the surgery.[4]

The surgery caused Duran-Colon to bleed excessively, and he was still bleeding when he returned to Cheshire.[5] There, he was strip-searched by Correction Officer Bailey and then sent to the medical unit where he was seen by Nurse Manny.[6] Nurse Manny informed Duran-Colon that he was bleeding profusely from his penis and rewrapped his penis.[7] Duran-Colon inquired whether he could return to UConn Medical Center due to his bleeding, but Nurse Manny sent Duran-Colon back to his housing unit.[8]

On the morning of December 9, 2020, Duran-Colon informed his unit officer that he was still bleeding.[9] The unit officer informed the medical staff about Duran-Colon's bleeding, and Duran-Colon was then seen by Nurse Ant and Nurse Sandra.[10] Nurse Sandra allegedly "ripped off the bandage on [Duran-Colon's] penis," inspected it, and stated that he was "fine."[11] In doing so, Nurse Sandra allegedly damaged Duran's surgical sutures, "made the hole bigger," and caused additional bleeding.[12]

Later, Duran-Colon informed his unit officer that he was still bleeding, and he was returned to the medical unit.[13] Nurse Ant provided him with an ice bag, and he returned to his housing unit.[14]

Sometime later, Duran-Colon informed Lieutenant Johnson that he was in pain and still

---

[3] *Id.* at 11, 16.
[4] *Id.* at 12.
[5] *Id.* at 12, 16.
[6] *Id.* at 16.
[7] *Ibid.*
[8] *Ibid.*
[9] *Ibid.*
[10] *Ibid.*
[11] *Ibid.*
[12] *Id.* at 14.
[13] *Id.* at 16.
[14] *Id.* at 16–17.

bleeding.[15] Lieutenant Johnson took pictures of Duran-Colon's bleeding penis.[16] Duran-Colon

was then sent to the medical unit and later to UConn.[17] He was provided with diapers and cotton

for his bleeding before being returned to Cheshire.[18]

On December 10, 2020, Duran-Colon informed the unit officer that he was supposed to

be seen that day by medical staff.[19] It is not clear from the complaint whether he was seen by

medical staff that day, but Duran-Colon alleges that medical staff "never followed up" on

December 11 and 12.[20]

Duran-Colon returned to the medical unit on December 18, 2020.[21] At the medical unit,

Nurse Jane made jokes about his surgery in front of the other medical staff, and Duran-Colon

became so upset by her conduct that he left the medical unit without being seen.[22] She made

more jokes about his surgery while conducting COVID-19 tests in Duran-Colon's housing unit

on December 19, 2020.[23]

Seven days after his circumcision, Dr. Ruiz had still not seen Duran-Colon for his

bleeding or for the new damage caused when Nurse Sandra tore the bandage from his penis.[24]

Dr. Ruiz failed to see Duran-Colon while he was at Cheshire.[25] In addition to Dr. Lindelof, Dr.

Nolan, Dr. Wagner, Dr. Albertsen, Dr. Ruiz, and Nurse Sandra, Duran-Colon also appears to

---

[15] *Id.* at 17.
[16] *Ibid.*
[17] *Ibid.*
[18] *Ibid.*
[19] *Ibid.*
[20] *Ibid.*
[21] *Id.* at 18.
[22] *Ibid.* Duran-Colon does not specify Nurse Jane's last name, but for the purposes of this order, I will assume that Nurse Jane is the same individual he elsewhere refers to as RN Jane M. Ventrella.
[23] *Ibid.*
[24] *Id.* at 18, 29.
[25] *Id.* at 29. Duran-Colon also alleges in a conclusory manner that Dr. Ruiz "failed to help me from being assaulted by inmate," *ibid.*, but Duran-Colon gives no other context for the allegation.

allege that RN Ventrella,[26] Commissioner Quiros,[27] and Governor Lamont[28] were all deliberately indifferent to his serious medical needs.

Duran-Colon's complaint contains several additional allegations that appear to be unrelated to his circumcision. In October 2020, Duran-Colon was called to the mental health unit to talk with Dr. Lee.[29] He explained to Dr. Lee that he required a single cell because he had previously been placed in a cell with homosexual cellmates, including one cellmate at Garner Correctional Institution who had punched Duran-Colon in the ribs after Duran-Colon refused to have sex with him.[30] He also told Dr. Lee that he did not want to talk to mental health staff at his cell door about his mental health status, which Duran-Colon believed would violate the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").[31] Because of his refusal to talk about his mental health status at his cell door, Dr. Lee took Duran-Colon off of his medication for thirty days.[32]

Duran-Colon also alleges that he became "very sick" for three weeks after Lieutenant Owens placed an inmate with COVID-19 in Duran-Colon's cell.[33]

Duran-Colon makes additional allegations against RCOO Furey and RCOO Ayala. Furey allegedly "failed to help" Duran-Colon.[34] On unspecified dates, Furey "would not call" Duran-Colon for sick call.[35] It appears that Duran-Colon requested some form of medical attention starting on July 1, 2021, but Furey and other DOC officials "would not call to medical" until

---

[26] *Id.* at 13.
[27] *Id.* at 26.
[28] *Id.* at 24–25.
[29] *Id.* at 22.
[30] *Ibid.*
[31] *Ibid.*
[32] *Id.* at 23.
[33] *Id.* at 20.
[34] *Id.* at 27.
[35] *Ibid.*

after Duran-Colon had "fallen out in the hallway" on September 4, 2021.[36] On other unspecified dates, RCOO Ayala failed to respond to Duran-Colon's requests, including his requests about being tested for infection due to "bad food" and "bad water."[37]

Duran-Colon seeks money damages in connection with the above allegations.[38] He also requests to be provided with better food, bottled water, blood testing to determine infections from water and food, clothing and footwear that fits him, medical care from a specialist for the damage caused from his circumcision, mental health medications, and that he be "moved out of here."[39]

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Ibid*. If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010).[40]

The Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—to give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

---

[36] *Ibid.*
[37] *Id.* at 28.
[38] *Id.* at 47, 49.
[39] *Id.* at 27, 29, 30, 32–33.
[40] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

(2007). Notwithstanding the rule of liberal interpretation for a *pro se* complaint, a complaint will not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

In addition, Rule 8 of the Federal Rules of Civil Procedure requires that pleadings must contain "a short and plain statement of the claim showing the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and that "each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). The point of Rule 8 is to relieve the Court and defendants alike of the "unjustified burden" of having "to select the relevant material from a mass of verbiage." *Celli v. Cole*, 699 F. App'x 88, 89 (2d Cir. 2017). Dismissal of a complaint is generally reserved for those cases in which the complaint is "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019) (*per curiam*).

Duran-Colon's complaint comprises fifty-two pages with allegations setting forth his claims on a defendant-by-defendant basis, interspersed with requests for relief, attachments A and B (providing narratives about the bleeding after his surgery, and his sexual assault and lack of mental health care), a staff listing for informal resolutions, documents concerning Legionnaires' Disease, and a written request to God on behalf of another individual. Because I can at least discern that Duran-Colon is asserting claims of medical indifference, his complaint arguably satisfies the Rule 8 standard. I construe Duran-Colon's complaint as primarily asserting Eighth Amendment deliberate indifference arising from his circumcision of December 8, 2020 and the resulting profuse bleeding.

Duran-Colon has, however, also alleged facts about Lieutenant Owens, Dr. Lee, RCOO Furey, and RCOO Ayala that bear no relation to his primary Eighth Amendment claims arising

from his circumcision. Rule 20 of the Federal Rules of Civil Procedure permits joinder of

multiple defendants in one action only if "any right to relief is asserted against them jointly,

severally, or in the alternative with respect to or arising out of the same transaction, occurrence,

or series of transactions and occurrences, and any question of law or fact common to all

defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). "What will constitute the same

transaction or occurrence under the first prong of Rule 20(a) is approached on a case by case

basis." *Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A.*, 596 F. Supp. 2d 821, 826 (S.D.N.Y.

2008). If the Court determines that a party was inappropriately joined, the Court may sever any

claim against the party and drop the party from the action. *See* Fed. R. Civ. P. 21; *Webb v.

Maldonado*, 2013 WL 3243135, at *3 (D. Conn. 2013) ("a court performing the screening

required by § 1915A may find it convenient to exercise its authority to sever parties *sua sponte*

as permitted by Rule 21 and direct the plaintiff to proceed against those parties in separate

actions").

I conclude that several of the defendants were improperly joined. Duran-Colon alleges

that Lieutenant Owens failed to protect him against COVID-19; that Dr. Lee provided him with

inadequate mental health care; that RCOO Furey failed to respond to Duran-Colon's requests for

medical attention; and, that RCOO Ayala failed to respond to his concerns regarding bad food

and bad water. None of these allegations arise from the same transaction and occurrence as his

primary claims stemming from his circumcision and resulting bleeding. Furthermore, judicial

economy would not be facilitated by retaining these claims in a single action as each claim

would require discovery of different sets of evidence and separate proofs at trial. Accordingly, I

will sever and dismiss without prejudice Duran-Colon's claims against Lieutenant Owens, Dr.

Lee, RCOO Furey, and RCOO Ayala. Duran-Colon may pursue these severed claims in separate lawsuits.

### Eighth Amendment Deliberate Indifference

The Eighth Amendment to the U.S. Constitution prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. The Supreme Court has long recognized that prison officials violate the Eighth Amendment if they are deliberately indifferent to a substantial risk of serious harm or to the serious medical needs of a sentenced prisoner. *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Duran-Colon alleges that the defendants violated his Eighth Amendment rights by failing to render him appropriate medical care in connection with his circumcision and the pain and profuse bleeding that followed.

To state a claim for deliberate indifference to an inmate's serious medical needs, a plaintiff must satisfy two requirements. First, the prisoner must allege that "objectively, the alleged deprivation of medical care was sufficiently serious." *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017). An alleged deprivation is "sufficiently serious" if it creates "a condition of urgency, one that may produce death, degeneration, or extreme pain[.]" *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). Duran-Colon alleges that he experienced pain and profuse bleeding as a result of his botched circumcision. He further alleges that he was not provided with prompt follow-up medical care. For the purposes of this order, I will assume that these alleged deprivations are serious enough to satisfy the objective prong of the Eighth Amendment standard.

But Duran-Colon has failed to plausibly allege the second required prong—that, subjectively, any of the defendants acted with a reckless disregard for his serious medical needs. *See Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) ("Deliberate indifference is a mental

state equivalent to subjective recklessness."). First, with respect to the surgeons who performed his circumcision—namely, Drs. Lindelof, Nolan, Wagner, and Albertsen—Duran-Colon does not allege that any were "actually aware of a substantial risk that serious inmate harm w[ould] result." *See Washington*, 708 F. App'x 705 at 708. Because "[m]edical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness," *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011), I will dismiss the claims as against Lindelof, Nolan, Wagner, and Albertson.

Similarly, Duran-Colon alleges that Nurse Sandra "ripped off" his hospital bandage, making the "hole" in his penis "bigger" and causing additional bleeding.[41] But Duran-Colon does not allege that Nurse Sandra acted with any awareness that her conduct would exacerbate his injury. Rather, Duran-Colon specifically alleges that she removed his bandage for the purpose of inspecting his penis, and upon inspection, she determined that he was "fine."[42] Accordingly, I will dismiss Duran-Colon's deliberate indifference claim against Nurse Sandra.

Duran-Colon has alleged that Nurse Jane or RN Ventrella "was involved" in depriving him of medical care on December 9, 2020,[43] but aside from allegations that she made inappropriate jokes about his circumcision, he does not allege any facts suggesting that RN Ventrella acted with a reckless disregard for his serious medical needs. I will dismiss without prejudice Duran-Colon's deliberate indifference claim against RN Ventrella.

Duran-Colon alleges that Dr. Ruiz failed to see him while he was incarcerated at Cheshire. Duran-Colon has failed to allege, however, that Dr. Ruiz had any awareness of his surgery or his need to be seen for follow-up care. Accordingly, he has not plausibly alleged that

---

[41] *Id.* 14.
[42] *Id.* at 16.
[43] *Id.* at 13.

Dr. Ruiz acted with a conscious disregard of a substantial risk of harm posed to Duran-Colon after his circumcision. I will dismiss without prejudice Duran-Colon's deliberate indifference claim as against Dr. Ruiz.

Finally, Duran-Colon alleges that both Commissioner Quiros and Governor Lamont were deliberately indifferent to his serious medical needs. But aside from their general supervisory duties, Duran-Colon does not allege that either defendant was actually aware of his circumcision or its aftermath, much less that either defendant acted or failed to act in conscious disregard of his serious medical needs. "[T]here is no special rule for supervisory liability. Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Accordingly, the claims against Commissioner Quiros and Governor Lamont must be dismissed without prejudice.

In sum, Duran-Colon has not plausibly alleged the subjective prong for his deliberate indifference claims—that is, that any defendant was recklessly indifferent to his serious medical needs. Accordingly, Duran-Colon's deliberate indifference claims are dismissed without prejudice.

CONCLUSION

For the reasons set forth above, the Court DISMISSES without prejudice Duran-Colon's Eighth Amendment claims against Dr. Lindelof, Dr. Nolan, Dr. Wagner, Dr. Albertsen, RN Ventrella, Nurse Sandra, Dr. Ruiz, Commissioner Quiros, and Governor Lamont. The Court SEVERS and DISMISSES without prejudice Duran-Colon's claims against Lieutenant Owens, Dr. Lee, RCOO Furey, and RCOO Ayala. Accordingly, the Court DISMISSES this action, and the Clerk of the Court shall close this case. If, however, Duran-Colon believes that there are

10

additional facts that he can allege that will overcome any of the deficiencies identified in this ruling, then Duran-Colon may file a proposed amended complaint on or before **July 13, 2022** which the Court will construe as a motion to re-open and conduct another initial review pursuant to 28 U.S.C. § 1915A. Any such amended complaint shall contain no more than a short and plain statement of the plaintiff's claim for relief. The Court DENIES the motion for order (Doc. #8) as moot in light of the issuance of this ruling.

It is so ordered.

Dated at New Haven this 10th day of June 2022.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge